# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER BIRCHALL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **COUNTRYWIDE HOME LOANS, INC.,** | : | |
| **a/k/a COUNTRYWIDE BANK, N.A., et al.,** | : | |
| **Defendants.** | : | **No. 08-2447** |

## M E M O R A N D U M

PRATTER, J.                                                          NOVEMBER 12, 2009

In her Second Amended Complaint, Plaintiff Jennifer Birchall has sued Defendant

Countrywide Home Loans, Inc. ("Countrywide") for "wrongful use" and fraud, and pursuant to

the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, <u>et seq</u>.

Ms. Birchall seeks damages arising out of allegedly unlawful behavior by Countrywide relating

to its servicing of Ms. Birchall's mortgage.  Since filing this Complaint, Ms. Birchall has filed a

Cross-Motion to Amend the Second Amended Complaint in order to convert her "wrongful use"

claim into a claim for "abuse of legal process."

Countrywide moves to dismiss the entire Second Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1), on the ground that Ms. Birchall's claims are barred by

the <u>Rooker</u>-<u>Feldman</u> doctrine; and pursuant to Rule 12(b)(6), on the ground that Ms. Birchall has

failed to state any claim upon which relief can be granted.  Countrywide also argues that all of

Ms. Birchall's claims are barred by the doctrine of <u>res judicata</u>, and that her "wrongful use" claim

was previously dismissed with prejudice by this Court.  Furthermore, Countrywide contends that

Ms. Birchall's fraud claim is barred by the "gist of the action" doctrine and by Pennsylvania's

two-year statute of limitations, and that it fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires that fraud be pled with particularity. Finally, Countrywide states that Ms. Birchall's UTPCPL claim should fail because Ms. Birchall has failed to allege justifiable reliance.

Countrywide also asserts that granting Ms. Birchall's Cross-Motion to Amend would be futile, and that the Motion should therefore be denied, since the amended pleading would set forth a claim upon which, as a matter of law, Ms. Birchall is not entitled to relief.

For the reasons discussed below, the Court will grant Countrywide's Motion to Dismiss as to Ms. Birchall's fraud claim and all of her claims under sections of the UTPCPL other than the so-called "catchall" provision, 73 P.S. § 201-2(4)(xxi). With regard to Ms. Birchall's claim under the catchall provision of the UTPCPL, the Motion to Dismiss is denied. In addition, Ms. Birchall's Cross-Motion to Amend is denied as futile.

## JURISDICTION

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. In addition, for reasons discussed <u>infra</u>, the Court also has subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this Motion to Dismiss, the facts alleged in the Second Amended Complaint are considered to be true. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957). On that basis, the facts are as follows.

In or around August of 2005, Ms. Birchall entered into a mortgage refinancing agreement

with the mortgagee Countrywide in order to remove her ex-husband from her mortgage (Second Amend. Compl. ¶ 12).  Ms. Birchall now brings three claims relating to Countrywide's servicing of this mortgage (Id. ¶¶ 75-85).

According to Ms. Birchall, Countrywide made a variety of servicing and accounting errors relating to her account (Id. ¶ 2), and also engaged in "misrepresentation[ ]" and "willful misconduct" (Id. ¶ 3).  In particular, Ms. Birchall claims that Countrywide, *inter alia*, failed to credit certain of her payments towards her account (Id. ¶¶ 14, 19, 27-29, 52, 60); tardily credited other payments so as to collect late fees and keep her in danger of foreclosure (Id. ¶ 48); failed to communicate with her regarding important matters (Id. ¶¶ 31, 40, 44-46, 50, 56); and failed to correct servicing errors that she identified despite promising to do so (Id. ¶¶ 16, 22, 26, 27).

Ms. Birchall further claims that Countrywide's conduct rendered it "impossible" for her to remain current with her mortgage payments (Id. ¶ 3), thereby enabling Countrywide to file a foreclosure action against her in February of 2007 (Id. ¶¶ 54-57).  On the basis of the foreclosure, which Ms. Birchall alleges to have been erroneous, a default judgment was entered against Ms. Birchall in Pennsylvania state court, and her mortgaged property was sold to Countrywide for $1.00 in a November 2007 sheriff's sale (Id. ¶¶ 67-68).

Ms. Birchall's initial complaint, filed in May of 2008, alleged 13 causes of action.[1]  After Countrywide filed a motion to dismiss, she withdrew most of her claims (including, nota bene, her claim that Countrywide had engaged in wrongful use), leaving her with only two remaining

---

[1]  These included claims that Countrywide had engaged in violations of the Truth in Lending, Fair Credit Reporting, and Fair Debt Collection Practices Acts; civil rights violations; fraud; fraud on the court; negligence; slander of title; abuse of process; wrongful use; breach of contract; breach of covenant of good faith and fair dealing; and breach of fiduciary duty.

causes of action – <u>viz.</u>, fraud and abuse of process.  In December of 2008, this Court dismissed

these two claims without prejudice, and granted Ms. Birchall leave to file an amended complaint,

which she did in January of 2009.  Countrywide then filed a Motion to Dismiss the Second

Amended Complaint.  This motion is currently before the Court.

The Second Amended Complaint includes three counts.  One of these counts alleges

fraud, and another contains a new UTPCPL claim.  The third is titled "Wrongful Use," in spite of

her counsel having already withdrawn such a claim on her behalf.  In her response to the motion

to dismiss, Ms. Birchall has included a Cross-Motion to Amend the Second Amended

Complaint, asking to rename this count as "Abuse of Process."[2]  Ms. Birchall's Cross-Motion to

Amend is also before the Court.


## Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  <u>Conley</u>, 355 U.S.

at 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

order to "give the defendant fair notice of what the ... claim is and the grounds upon which it

rests."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley</u>, 355 U.S. at

47).  While a complaint need not contain detailed factual allegations, the plaintiff must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  <u>Id.</u> (citations omitted).  Specifically, "[f]actual allegations must be enough to raise

_____

[2] Plaintiff's counsel describes the inclusion of the words "Wrongful Use" in the Second
Amended Complaint as "inadvertent[ ]."

a right to relief above the speculative level ... ." Id. (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555-556 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

In ruling on a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. See Tellabs v. Makor Issues & Rts., 551 U.S. 308, 322 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).


DISCUSSION

Countrywide asserts three grounds for dismissing the entire Second Amended Complaint: (1) application of the Rooker-Feldman doctrine, which bars the re-litigation in federal court of a prior state court judgment; (2) application of res judicata, which bars the subsequent litigation of

claims that were actually litigated, or could have been litigated, in an earlier proceeding; and (3) application of Rule 12(b)(6), which empowers the Court to dismiss any complaint that does not state a claim upon which relief may be granted.

In addition, Countrywide asserts three independent grounds on which Ms. Birchall's fraud claim should be dismissed: (1) application of Rule 9(b), which requires that fraud be pled with particularity; (2) application of the "gist of the action" doctrine, which precludes plaintiffs from recasting breach of contract claims as tort claims; and (3) application of 42 Pa.C.S. § 5524, the Pennsylvania statute of limitations governing fraud actions.

For reasons discussed below, the Court concludes that the Rooker-Feldman doctrine and the principle of res judicata are both inapplicable to this case. However, Ms. Birchall has failed to plead with the requisite level of particularity a claim of fraud upon which relief may be granted.[3] And while she has also failed to state a claim under most of the UTPCPL provisions that she cites, she has successfully stated a claim under the UTPCPL's "catchall" provision. Finally, the Court finds that Ms. Birchall's Cross-Motion to Amend should be denied as futile.

## I. Subject Matter Jurisdiction

A Rule 12(b)(1) challenge to the Court's subject matter jurisdiction that contests the sufficiency of the pleadings is known as a "facial" challenge. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citations omitted). Where a defendant presents a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court must accept all well-

---

[3] As a result, the Court will not address Countrywide's arguments regarding the gist of the action doctrine or the fraud statute of limitations.

pleaded allegations in plaintiff's complaint as true, and must view them in the light most favorable to the plaintiff. In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2004). However, a party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

The Rooker-Feldman doctrine provides that federal courts other than the Supreme Court of the United States lack subject matter jurisdiction to review and reverse judgments rendered by state courts. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)); see also 28 U.S.C. § 1257 (conferring certiorari power solely upon the Supreme Court of the United States). Although Section 1257 refers only to orders and decrees of the highest state court, 28 U.S.C. § 1257(a), the Rooker-Feldman doctrine has been applied to final decisions of lower state courts. In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (citing Walker v. Horn, 358 F.3d 321, 329 (3d Cir. 2004)). Since the doctrine is jurisdictional in nature, the question of its applicability is one that the Court is "bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1994) (quoting Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900)).

The Supreme Court recently has emphasized that Rooker-Feldman applies only to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corporation v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Therefore, when "a federal plaintiff present[s] some independent claim, albeit one that

denies a legal conclusion that a state court has reached in a case to which he was a party ... , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id.[4] Put simply, it has become clear that Rooker-Feldman is not implicated every time that a party brings to federal court a matter that was previously litigated in state court. See Lance, 546 U.S. 459 (observing that such a broad interpretation of Rooker-Feldman would interfere with Congress's mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgment emerged"); Parkview Assoc. Partnership v. City of Lebanon, 225 F.3d 321, 329 (3d Cir. 2000) (Rooker-Feldman is not merely a jurisdictional version of preclusion).

In the Third Circuit, the Rooker-Feldman doctrine has been held to "prohibit[ ] District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling." Knapper, 407 F.3d at 580. Thus, a claim is barred by Rooker-Feldman under two circumstances: (1) if the federal claim was actually litigated in state court prior to the filing of the federal action; or (2) if the federal claim is "inextricably intertwined" with state adjudication such that federal relief can only be predicated upon a conclusion that the state court was wrong. Id. In either case, Rooker-Feldman bars a litigant's federal claims and divests the district court of subject matter jurisdiction over those claims. Id. See also Gary v. Braddock Cemetary, 517 F.3d 195, 200 n.5 (3d Cir. 2008);

---

[4] Although Exxon limited the scope of Rooker-Feldman, it did not – contra Ms. Birchall's Response in Opposition to the Motion to Dismiss – herald its "demise." In fact, the doctrine's continuing applicability to a limited set of cases has been reaffirmed by the Supreme Court since Exxon was decided. See Lance v. Dennis, 546 U.S. 459, 463-466 (2006) (reiterating Exxon's cautionary language regarding the doctrine, but declining to declare it dead).

Hansford v. Bank of America, 2008 U.S. Dist. LEXIS 65502, *10 (E.D. Pa. August 22, 2008); In re Stuart, 367 B.R. 541, 548-51 (Bankr. E.D. Pa. 2007); In re Randall, 358 B.R. 145, 154-156 (Bankr. E.D. Pa. 2006); In re Cooley, 365 B.R. 464, 471 (Bankr. E.D. Pa. 2007).

Here, the state court decision at issue is the mortgage foreclosure judgment. Because none of the specific claims that Ms. Birchall now brings here were actually litigated in that prior proceeding, the Rooker-Feldman doctrine would only apply to those of her claims, if any, that are "inextricably intertwined" with the foreclosure judgment.[5] A federal claim is considered to be inextricably intertwined with a prior state court judgment when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment ...." Knapper, 407 F.3d at 580 (quoting Walker v. Horn, 385 F.3d at 329). In other words, Rooker-Feldman bars federal district and bankruptcy courts from exercising jurisdiction over claims that, if granted, would prevent a state court from enforcing its orders, id.; or over any claim that is the "functional equivalent" of an appeal from a state court judgment. Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004).

A number of opinions from Third Circuit courts address the scope of Rooker-Feldman as applied to lawsuits brought by plaintiffs who were previously on the losing end of a state mortgage foreclosure judgment. Uniformly, these opinions have held that lower federal courts

---

[5] Ms. Birchall argues, incorrectly, that since the state mortgage foreclosure judgment was entered in default, it was not an "adjudication on the merits" and therefore falls outside the ambit of the Rooker-Feldman doctrine. In fact, Rooker-Feldman applies to default judgments as well as state judgments entered after a trial on the merits. See, e.g., Knapper, 407 F.3d 573; Andrew v. Ivanhoe Financial, Inc., 2008 U.S. Dist. LEXIS 42860 at *22-23 (E.D. Pa. May 30, 2008) (citations omitted).

lack subject matter jurisdiction over any claim that functions as an appeal of the state judgment or would, if successful, negate the state court's ruling.  See, e.g., Knapper, 407 F.3d at 581 (federal court cannot exercise jurisdiction over claims that would require the court to negate a state foreclosure judgment); Smith v. Litton Loan Servicing, 2005 U.S. Dist. LEXIS 1815 (E.D. Pa. 2005) (plaintiffs cannot appeal a state foreclosure ruling in federal court).  The category of claims that would negate the state foreclosure judgment includes any claim that would rescind the mortgage loan, because a mortgage foreclosure action depends upon the existence of a valid mortgage, and the rescission of the loan would have the effect of invalidating the mortgage and thus the state judgment.  In re Madera, 2008 U.S. Dist. LEXIS 25864, *27 (E.D. Pa. Mar. 26, 2008) (citing Randall, 358 B.R. 145); see also Andrew, 2008 U.S. Dist. LEXIS 42860 at *16-26 (federal court lacks jurisdiction over claims that would have the practical effect of rescinding a mortgage loan);[6] Ayers-Fountain v. Eastern Savings Bank, 153 F. App'x 91, 92 (3d Cir. 2005) (federal court lacks jurisdiction where plaintiff seeks rescission of loan, because the relief sought would invalidate the state court judgment); Stuart, 367 B.R. at 549-50 (bankruptcy court lacks jurisdiction over rescission claim where mortgage was subject to state foreclosure judgment); In re Reagoso, 2007 Bankr. LEXIS 2004, *6-9 (Bankr. E.D. Pa., June 6, 2007) (same); Cooley, 365 B.R. at 470-73 (same).

---

[6] Ms. Birchall's Response in Opposition to the Defendant's Motion to Dismiss needlessly concedes that if this Court "were merely to wholly adopt Andrew, ... Plaintiffs [sic] Second Amended Complaint would, admittedly, be here jurisdictionally barred under Rooker-Feldman" (Response in Opposition to Motion to Dismiss, ppg. 8-9).  Plaintiff's counsel appears to have misread the Andrew opinion, which holds that federal courts lack jurisdiction over any claims that would negate a state foreclosure judgment.  Andrew, 2008 U.S. Dist. LEXIS 42860 at *16-26.  The plaintiffs in Andrew sought rescission of their mortgage, id. at *10-11, and given that Ms. Birchall does not currently seek rescission, this Court does not need to challenge or question Andrew in order to exercise jurisdiction over her claims.

However, "because relief in the form of damages arising from conduct by adverse parties does not in any way reverse the state court foreclosure judgment," Rooker-Feldman does not bar a plaintiff who has lost a mortgage judgment action in state court from bringing an action in federal court seeking damages relating to the servicing of the mortgage. Hansford, 2008 U.S. Dist. LEXIS 65502 at *11-15. See also In re Faust, 353 B.R. 94 (Bankr. E.D. Pa. 2006) (federal court lacks jurisdiction over claim seeking rescission, but not action to recoup money damages); Ayers-Fountain, 153 F. App'x at 92 (same). As this Court has previously observed, "[t]he amount due a mortgagee can be adjusted without affecting the validity of the mortgage itself or the right of the mortgagee to foreclose upon its judgment." Hansford, 2008 U.S. Dist. LEXIS 65502 at *11.

Not only can a federal court award damages without evaluating the validity of the foreclosure judgment, but a mortgage foreclosure action, as an action in rem, does not allow either party to pursue an action in personam, such as an action for damages. Id. at *12-13 (citing Reagoso, 2007 Bankr. LEXIS 2004); Indymac Bank, F.S.B. v. Vicuna, 83 Pa. D. & C. 4th 129, 133 (C.C.P. Monroe 2009) (citations omitted); see also Pa. R. Civ. P. 1141 (action to foreclose a mortgage "shall not include an action to enforce a personal liability"). Actions for damages do not find their home in state foreclosure suits, and at least two federal courts of appeals have held that "an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999) (citing Wood v. Orange County, 715 F.2d 1543, 1547 (11th Cir. 1983)).

Ms. Birchall's initial complaint requested rescission of the mortgage loan, as well as the

termination of any security interest in her property which may have been created under it. However, this language is absent from her Second Amended Complaint, which seeks only damages. In addition, the damages sought are based primarily on alleged conduct by Countrywide which appears to predate the state foreclosure judgment, and not on the judgment itself. Therefore, the relief that Ms. Birchall currently seeks would not have the effect of reversing or negating the state court's foreclosure judgment; accordingly, her claims here are not inextricably intertwined with that judgment. Rooker-Feldman is a narrow doctrine, and none of Ms. Birchall's claims fall within its ambit. This Court may properly exercise jurisdiction over all of her claims.

### II.    Res Judicata

"Res judicata, also known as claim preclusion, provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited." McGill v. Southwark Realty Co., 828 A.2d 430, 435 (Pa. Cmwlth. 2003). Where an allegedly preclusive decision was issued by a state court, federal courts must apply the preclusion principles of that court's state. Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988); In re Marks, 192 B.R. 379, 383 (3d Cir. 1996). This rule derives from the full faith and credit statute, 28 U.S.C. § 1738, which requires that federal courts give the same effect to state-issued judgments as would courts of the issuing state. Gregory, 843 F.2d at 116 (citing Davis v. U.S. Steel Supply, 688 F.2d 166, 170 (3d Cir. 1982)); In re Marks, 192 B.R. at 383-384.

Pennsylvania state courts have held that invocation of res judicata requires that both the former and latter suits possess the following common elements: (1) identity in the thing sued

upon; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4)

identity of the capacity of the parties suing or being sued. In re Iulo, 766 A.2d 335, 337 (Pa.

2001) (citing Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664 (Pa. 1975)); see also Allegheny

Int'l v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (same). Because the

application of claim preclusion does not require that the merits of the claim were actually

litigated in an earlier proceeding, a judgment by default may result in a determination of res

judicata if the four elements enumerated above are satisfied. Zimmer v. Zimmer, 326 A.2d 318

(Pa. 1974) (citations omitted); accord., e.g., Fox v. Gabler, 626 A.2d 1141, 1143 (1993); see also

Wexler, 1994 U.S. Dist. LEXIS 14992, *15-16 (E.D. Pa. October 21, 1994) (state court default

judgment in mortgage foreclosure bars federal court challenge to mortgage via application of res

judicata).

     In Pennsylvania, the doctrine of res judicata applies not only to claims actually litigated,

but also to claims which could have been litigated during an earlier proceeding if they were part

of the same cause of action. R/S Financial Corp. v. Kovalchick, 716 A.2d 1228, 1230 (1998)

(citing Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (1995)). And conversely, any claims

that could not have been litigated in an earlier proceeding are not precluded. See Dithridge

House Ass'n v. Dep't of Environmental Resources, 541 A.2d 827, 831 (Pa. Cmwlth. 1988).

     As noted in the discussion of subject-matter jurisdiction, supra, mortgage foreclosure

proceedings are strictly in rem. Counterclaims are permissible, but they must be directly related

to the transaction or occurrence out of which the mortgage arose. Indymac Bank, 83 Pa. D. & C.

4th at 133 (citing Pa. R. Civ. P. 1148). Pennsylvania courts have read this rule narrowly, holding

that the only counterclaims allowed are counterclaims "incident to the creation of the mortgage

relationship itself." <u>Cunningham v. McWilliams</u>, 714 A.2d 1054, 1057 (Pa. Super. 1998) (<u>citing</u> <u>Chrysler First Business Credit Corp. v. Gourniak</u>, 411 Pa. Super. 259, 601 (Pa. Super. 1992)).

Thus, just as Ms. Birchall's claims are not jurisdictionally barred by the <u>Rooker</u>-<u>Feldman</u> doctrine, these claims are not sufficient for invocation of the <u>res judicata</u> doctrine. Because Ms. Birchall could not have brought <u>in personam</u> claims in the course of the mortgage foreclosure hearing, the claims for damages that she presents now are not precluded by the state court judgment. <u>See</u> <u>In re Randall</u>, 358 B.R. at 166 (claims for damages that plaintiff could not have raised in a prior state court proceeding not precluded) (citations omitted).


### III. Fraud

The Court previously dismissed without prejudice the fraud claim presented in Ms. Birchall's first Complaint, observing that she had merely recited the elements of the tort. Ms. Birchall has added to the contours of her allegations in the Second Amended Complaint, but it is still unclear which of Countrywide's alleged statements Ms. Birchall claims was fraudulent as opposed to merely false or misleading. Nowhere in the current pleading does Ms. Birchall identify a particular representation or set of representations and explain how it fits into a theory of fraud.[7]

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or

---

[7] Under Pennsylvania common law, a fraud claim requires the following: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) an injury that was proximately caused by the reliance. <u>Gibbs v. Ernst</u>, 647 A.2d 882, 889 (Pa. 1994) (citing Restatement of the Law, Second, Torts, § 525); <u>accord.</u>, <u>e.g.</u>, <u>Overall v. Univ. of Pa.</u>, 412 F.3d 492, 498 (3d. Cir. 2005).

mistake, a party must state with particularity the circumstances constituting fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).   In order to satisfy this exacting standard, a plaintiff must "plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage."  Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992) (citing Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983)).

The Second Amended Complaint fails to plead fraud with this level of particularity.  Ms. Birchall catalogues at some length her version of the events that led to the foreclosure judgment, and then asserts generally that the "Defendant misrepresented and/or omitted material facts to Plaintiff, including the aforesaid" – with "the aforesaid" apparently referring to any of the facts alleged anywhere in the body of the pleading.  It is not the role of the Court to review a complaint and craft a theory as to how facts and false or misleading statements alleged therein might be combined or embellished to create a colorable theory of fraud.  Because the purpose of the heightened pleading standard is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior,"[8] a complaint alleging fraud must outline a theory of fraud that is coherent on its face.  Where, as here, a complaint fails to meet this standard, a fraud claim is properly dismissed.  See, e.g., Rubenstein v. Dovenmuehle, 2009 U.S. Dist. LEXIS 100656, *15-16 (E.D.

---

[8]  Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

Pa. October 28, 2009) (dismissing fraud claim not pled with particularity); Seldon v. Home Loan Servs., 2009 U.S. Dist. LEXIS 68246, *47-48 (E.D. Pa. August 4, 2009) (same); Wenglicki v. Tribeca Lending Corp., 2009 U.S. Dist. LEXIS 63738, *5-7 (E.D. Pa. July 22, 2009) (same).

Because Ms. Birchall has once again failed to plead with particularity a theory of fraud upon which relief may be granted, her fraud count is dismissed with prejudice pursuant to both Rule 9(b) and Rule 12(b)(6).[9]  The decision to dismiss this claim with prejudice is based on the fact that the Court previously provided Ms. Birchall with specific guidance regarding the flaws in her fraud claim, which she failed to heed; and on the Court's judgment that allowing Ms. Birchall further opportunities to state a fraud claim would be futile and would unduly delay the resolution of this matter.  See Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 165-166 (3d Cir. 2004) (where "plaintiffs [have chosen] at their peril not to heed the district court's guidance and avail themselves of an opportunity to rectify the deficiencies of the amended complaint ... justice does not require that leave to amend be given"); Krantz v. Prudential, 305 F.3d 140, 144 (3d Cir. 2002) ("[the] district court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them"); In re Burlington Coat Factory, 114 F.3d 1410, 1434 (3d Cir. 1997) (a district court may deny leave to replead a twice-dismissed fraud claim to prevent undue delay or prejudice); Foman v. Davis, 371 U.S. 178, 182 (1962) (identifying undue delay, futility, and plaintiff's repeated failure to cure deficiencies as valid reasons for a district court to deny plaintiff leave to amend).

_____

[9]  As a result, the Court need not rule on the question of whether her fraud claim might be barred by Pennsylvania's statute of limitations.  Similarly, the Court will not address Countrywide's arguments regarding the "gist of the action" doctrine.

## IV.    Unfair Trade Practices Consumer Protection Law

Ms. Birchall further asserts that Countrywide's actions constitute unfair or deceptive practices under the UTPCPL, 73 P.S. § 201-1, et seq.  The Second Amended Complaint quotes six subsections of this statute, but Ms. Birchall has failed to enumerate which of Countrywide's actions she believes to have violated each of these subsections, most of which are inapposite. Along with these six subsections, Ms. Birchall has for some illusive reason included three additional bullet points that do not come from the UTPCPL.  Two of these points are of mysterious provenance, and the third quotes from a statute that has been rescinded, 37 Pa. Code § 303.3(3).  These distractions notwithstanding, Ms. Birchall has alleged successfully conduct on the part of Countrywide sufficient to make out a claim for deception under the catchall provision of the UTPCPL, 73 P.S. § 201-2(4)(xxi).

The Second Amended Complaint does not reference any of Countrywide's marketing materials; nor does it cite any communication between Ms. Birchall and Countrywide during the mortgage loan origination process; nor does it describe or quote the terms of any contractual agreements between Ms. Birchall and Countrywide.  Therefore, Ms. Birchall has not pled facts sufficient to establish that Countrywide "caus[ed] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services," 73 P.S. § 201-2(4)(ii); "represent[ed] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have," § 201-2(4)(v); "advertis[ed] goods or services with intent not to sell them as advertised," § 201-2(4)(ix); or "fail[ed] to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after

a contract for the purchase of goods or services is made," § 201-2(4)(xiv).

Ms. Birchall also asserts – as though still quoting from the same statute – that: (1) "Defendants [sic] misrepresented to Plaintiffs [sic] that the loan would be beneficial when in fact it was not, and Defendants [sic] knew it was not"; and (2) "Defendants [sic] misrepresented the characteristics or benefits of the loan." Neither of these two statements appears or summarizes anything in the UTPCPL.[10] Moreover, neither conclusion is supported by allegations in the Second Amended Complaint. Another bullet point in this section of the pleading – "Defendants [sic] misrepresented to Plaintiffs [sic] the character, extent, or amount of the debt or its status in a legal proceeding" – is identified in the Complaint as coming from the UTPCPL, but in fact quotes from a state law that was rescinded nearly a decade ago.[11] Ms. Birchall cannot recover under this superannuated provision.

Ms. Birchall further alleges, without explanation, that Countrywide's behavior violated several other state and federal statutes, and that the violation of each of these statutes constitutes a per se violation of the UTPCPL.[12] This novel theory, for which Ms. Birchall provides no legal support, has been repudiated in numerous opinions by judges in this district considering motions

_____

[10] Ms. Birchall provides a citation for the first statement (79 P.S. § 202-1(v)), but this is a nonexistent statute. She offers no citation for the second assertion.

[11] 37 Pa. Code § 303.3(3). Chapter 303 was rescinded by an act of March 28, 2000 (P. L. 23, No. 7), known as the Fair Credit Extension Uniformity Act (73 P.S. § 2270.1, et seq.). See also Garczynski v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 71417, *7 n.3 (E.D. Pa. August 12, 2009) (dismissing similar claim in complaint filed by Ms. Birchall's counsel).

[12] The statutes that Ms. Birchall identifies as falling into this category are the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 et seq.; two articles of the Uniform Commercial Code ("UCC"); and unspecified "Rules and Regulations promulgated by the FTC [Federal Trade Commission]."

to dismiss complaints filed by Ms. Birchall's counsel.[13]  The Court adopts the reasoning of these

opinions in dismissing this portion of Ms. Birchall's claim.

The only portion of Ms. Birchall's UTPCPL claim that is adequate for present purposes is

her allegation that Countrywide violated the statute's "catchall" provision.  In addition to the

twenty practices that it enumerates specifically, the UTPCPL also provides that "engaging in any

other fraudulent or deceptive conduct which creates a likelihood of confusion or of

misunderstanding" constitutes an "unfair or deceptive act or practice."  73 P.S. § 201-2(4)(xxi);

Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 190 n.4 (Pa. 2007).

The requirements for pleading fraudulent and deceptive practices under this catchall

provision are "in flux" in Pennsylvania state and federal courts, Chiles v. Ameriquest Mortg. Co.,

551 F. Supp. 2d 393, 398 (E.D. Pa. 2008) (citations omitted), and disagreements among lower

courts have yet to be resolved by the Pennsylvania Supreme Court.  Hansford, 2008 U.S. Dist.

LEXIS 65502 at *38-39 n.7.  However, because the UTPCPL is construed liberally, Keller v.

Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. Super. 1999), the Court will join others in this

district to permit a plaintiff who alleges deceptive conduct to proceed without alleging all of the

individual elements of common law fraud.  See, e.g., Rubenstein, 2009 U.S. Dist. LEXIS 100656

at *15-16; Hansford, 2008 U.S. Dist. LEXIS 65502 at *38-39; Chiles, 551 F. Supp. 2d at 398;

---

[13]  See Hartman v. Deutsche Bank, 2008 U.S. Dist. LEXIS 59136, *12-14 (E.D. Pa.
August 1, 2008) (dismissing claim alleging that violations of, inter alia, TILA, RESPA, FCEUA,
FTC rules, and the UCC constitute per se violations of the UTPCPL); Morilus v. Countrywide,
2008 U.S. Dist. LEXIS 103556, *45 (E.D. Pa. Dec. 23, 2008) (TILA and RESPA); Kuenzi v.
Eurosport Cycles, Inc., 2009 U.S. Dist. LEXIS 55804, *7-8 (E.D. Pa. June 30, 2009) (TILA);
Christopher v. First Mutual Corp., 2008 U.S. Dist. LEXIS 32781, *41-44 (E.D. Pa. April 22,
2008) (TILA and RESPA); Wenglicki, 2009 U.S. Dist. LEXIS 63738 at *17-18 (FCEUA);
Garczynski, 2009 U.S. Dist. LEXIS 71417 at *20-26 (TILA, RESPA and FCEUA).

Christopher, 2006 U.S. Dist. LEXIS 2255 at *9-10; Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa. 2002); In re Crisomia v. Parkway Mortgage, 286 B.R. 604 (Bankr. E.D. Pa. 2002); Patterson v. Chrysler Fin. Co., 263 B.R. 82 (Bankr. E.D. Pa. 2001); Rodriguez v. Mellon Bank, 218 B.R. 764 (Bankr. E.D. Pa. 1998).

Under this conventional analysis, plaintiffs alleging deceptive practices need only allege deceptive conduct and an ascertainable loss. Flores, 246 F. Supp. 2d at 432; Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa. Commw. 2003). Given that a deceptive conduct claim under the UTPCPL has different elements than a fraud claim, and labors under a less onerous pleading standard, there is no inconsistency in dismissing a plaintiff's common law fraud claim but declining to dismiss a deceptive conduct claim stemming from the same alleged conduct. See, e.g., Seldon, 2009 U.S. Dist. LEXIS 68246 at *47-48.

Ms. Birchall has alleged that Countrywide engaged in deceptive conduct which created a likelihood of confusion or of misunderstanding with regard to its servicing of her mortgage, and she has further alleged an ascertainable loss resulting from Countrywide's alleged actions. Even though they are not sufficient to support a common law fraud claim, these allegations suffice to state a claim for deceptive acts under the UTPCPL.


### V. Wrongful Use and Plaintiff's Cross-Motion to Amend

In her first complaint, Ms. Birchall claimed that Countrywide had engaged in wrongful use of civil proceedings. This claim was later dismissed with prejudice after it was withdrawn by Ms. Birchall's counsel during oral argument. Nevertheless, Ms. Birchall has included a claim entitled "Wrongful Use" in the Second Amended Complaint. Now she hopes to amend the

Second Amended Complaint to change the title of this claim to "Abuse of Process," on the ground that amendments should be liberally granted and this claim was inadvertently misnamed.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given "when justice so requires." However, in the interests of efficiency and economy for litigants and the courts, "a district court justifiably may deny leave to amend on ... the ground that an amendment would be futile." Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). An amendment is considered futile "if the pleading, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Id. (citations omitted). In making a futility determination, the court must apply the same sufficiency standard that it would when evaluating motions to dismiss pursuant to Rule 12(b)(6). Id. (citations omitted).

Granting Ms. Birchall's amendment request would be futile for at least two reasons. First, changing the title of this Count from "Wrongful Use" to "Abuse of Process" would not alter the language of the actual claim – which would continue to allege, as it does now, that "Defendant is liable to Plaintiff for her losses, expenses and damages pursuant to 42 Pa. C.S.A. 8351 et seq., titled Wrongful Use of Civil Proceedings." Ms. Birchall's wrongful use claim was previously dismissed with prejudice after it was withdrawn by her counsel, and a plaintiff cannot resurrect a properly-dismissed claim simply by changing the language of the heading under which it appears.

Second, even assuming the truth of the allegations in the Second Amended Complaint, Ms. Birchall has not stated a claim for abuse of process. The Pennsylvania Supreme Court has held that "[t]he gist of an action for abuse of process is the improper use of process after it has

been issued, that is, a perversion of it." McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (citing Mayer v. Walter, 64 Pa. 283 (1870)).  A legal process is considered "perverted" when a party has used legal process "primarily to accomplish a purpose for which [it] was not designed." Dumont Television & Radio Corp. v. Franklin Electric Co. of Philadelphia, 154 A.2d 585, 587 (Pa. 1959). In other words, it is "the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." McGee, 535 A.2d at 1026.

Ms. Birchall argues that Countrywide must have perverted the foreclosure process, since "it cannot be the primary purpose of foreclosure to Sheriff's Sale a residence [sic] when there is no underlying mortgage deficiency."  Notwithstanding Ms. Birchall's seemingly sensible proposition as far as it goes, it also cannot be the case that every home owner who contests the validity of an adverse mortgage foreclosure judgment has grounds to bring an abuse of process claim in federal court.  This reasoning, if adopted, would require the Court routinely to second-guess state court foreclosure decisions,[14] and would also allow the losing party in every case to pursue an abuse of process claim merely by claiming that an earlier matter was wrongly decided. In actual fact, Ms. Birchall has not even alleged that Countrywide used the mortgage foreclosure process for any purpose other than that for which it was designed – i.e., to foreclose on her home. See, e.g., Hansford, 2008 U.S. Dist. LEXIS 65502 at *42-44 (dismissing abuse of process claim where foreclosure action in question had terminated in mortgagor's favor).

Accordingly, because both her stated claim and her theoretical claim would be futile to pursue, the Motion to Amend the Complaint is denied.

---

[14]  See Section I, "Subject Matter Jurisdiction," *supra*.

**CONCLUSION**

Count I of the Second Amended Complaint, alleging Wrongful Use, has already been dismissed with prejudice – and Plaintiff's Motion to Amend this Count in order that it might survive the Defendant's Motion to Dismiss is denied. Count II, which alleges fraud, is also dismissed with prejudice. Count III, alleging violations of the Unfair Trade Practices Consumer Protection Law, is dismissed without prejudice except insofar as it alleges that the Defendant violated the Law's catchall provision, 73 P.S. § 201-2(4)(xxi). An order to this effect follows.

_____

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE